IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

MARQUEA H.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,[2]

    Defendant.

Case No. 3:17-cv-01163-AA
**OPINION AND ORDER**

AIKEN, Judge:

    Plaintiff Marquea H. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration (SSA) ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the SSA is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to defendant only as Commissioner of Social Security.

Page 1 – OPINION AND ORDER

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

Plaintiff applied for DIB on August 6, 2013, and she filed for SSI on March 2, 2015. She alleged disability beginning June 8, 2011[3] due to degenerative disc disease, torn labrum, partially torn rotator cuff, unaligned rib cage, medication limitations and requirements, chronic neck pain, arthritis, left ulnar neuropathy, migraines, and endometriosis.

Plaintiff's applications were denied initially and upon reconsideration. On December 1, 2015, plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ"). Plaintiff testified at the hearing, and was represented by counsel. A Vocational Expert (VE) also testified. The ALJ found plaintiff not disabled in a written decision issued January 22, 2016. After the Appeals Council denied review, plaintiff filed the present complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed,

---

[3] Plaintiff's DIB and SSI applications list an alleged onset date of September 11, 2008 but this was amended at the hearing upon the advice of counsel.

Page 2 – OPINION AND ORDER

because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the alleged disability onset date. Tr. 27; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: "degenerative disc disease, arthritis, left ulnar neuropathy, migraines, and endometriosis; 20 C.F.R. §§ 404.1520(c); *id.* §§ 416.920(c)." Tr. 27. At step three, the ALJ determined plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 28; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). In addition to other limitations not relevant to this appeal, the ALJ found that plaintiff had:

> [t]he residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She can lift and carry a maximum of 10 pounds. She can push and pull within those weight limits. She can stand and walk for two hours in an eight-hour workday. She can sit for six

Page 3 – OPINION AND ORDER

hours in an eight-hour workday. She requires the opportunity to shift from sitting to standing at will. She should have no exposure to extreme heat, extreme cold, humidity, and pulmonary irritants. She should have no exposure to unprotected heights and moving mechanical parts. She can occasionally climb ramps and stairs. She can occasionally climb ladders and scaffolds. She can occasionally stoop, kneel, crouch, and crawl. She can occasionally reach overhead with both arms. She can frequently balance. She can frequently handle, finger, and feel with her non-dominant hand. She can frequently use foot controls with both feet.

Tr. 28-9.

At step four, the ALJ concluded plaintiff could perform her past relevant work as a receptionist. Tr. 38; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). The ALJ continued to step five and found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as an appointment clerk, and/or call out operator. Tr. 38; C.F.R. §§ 404.1520(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled, and denied her applications for benefits.

## DISCUSSION

Plaintiff contends the ALJ committed at least four harmful errors. First, plaintiff argues the ALJ did not provide clear and convincing reasons for not crediting plaintiff subjective symptoms. Secondly, plaintiff argues that the ALJ failed to correctly assess the lay witness testimony of her neighbor. Plaintiff's contends that the ALJ erred in evaluating the medical opinions of sports medicine specialist, Dr. Charles Webb, and treating physician Dr. Holly Hofkamp. Additionally, plaintiff avers the ALJ failed to incorporate all medical findings into her RFC. Finally, plaintiff argues that the ALJ has a duty to develop the record further on the question of plaintiff's anxiety. I address each argument in turn.

I. *Plaintiff's Subjective Symptom Statements*

I begin with plaintiff's argument that the ALJ failed to provide legally sufficient reasons to reject her testimony about the extent of her symptoms and functional limitations. When a

Page 4 – OPINION AND ORDER

claimant's medically documented impairments reasonably could be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ discussed several reasons that she found the plaintiff to be only partially credible concerning the intensity, persistence, and limiting effects of her symptoms. These reasons include the fact that plaintiff traveled internationally (to Mexico, Yemen, and Brazil) during the period of alleged disability, and inconsistent testimony regarding issues such as her ability to drive, shop, and work. At the hearing, the ALJ asked plaintiff how often she drove, and she answered, "Two, three times a week." Tr. 50. The ALJ asked plaintiff about shopping and meal preparation, and the plaintiff said that "I can run to Freddy's [i.e. Fred Meyer]…I'll try to cook a big pot of something…and then make it stretch." Tr. 67. Regarding work, the plaintiff performed work-like activity in 2012 as the caregiver for her mother and stepfather. She also worked as a tax consultant in 2013. These facts create inconsistencies in plaintiff's testimony regarding her limitations and her inability to work. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163

(9th Cir. 2014) (holding that an ALJ may consider prior inconsistent statements concerning symptoms in weighing subjective symptom testimony).

Regarding the inconsistency of plaintiff's states with evidence in the medical record, the ALJ noted that in 2014, plaintiff was going to the gym daily, lifting weights, walking, and doing stomach crunches. In 2015, plaintiff was managing her pain after knee surgery, and walking "three miles a day;" she had also ended use of narcotic pain mediation and begun riding her bike. Tr. 34-35. The ALJ's account of the record as a whole demonstrated that the medical evidence did not support the level of limitation that the plaintiff alleged. This, too, is a clear, convincing reason to doubt plaintiff's symptom allegations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (stating that "daily activities may be grounds" to question a plaintiff's testimony about symptom severity when those activities "contradict [the plaintiff's] other testimony").

The ALJ did venture into less certain territory when she noted plaintiff's "use of marijuana and tobacco raises the question of whether she is motivated to improve her functional ability." Tr. 36. But in view of the rest of the ALJ's reasoning, any error committed here was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

In sum, the ALJ supported her decision to give limited weight to plaintiff's symptom testimony with clear, convincing reasons supported by substantial evidence. Moreover, to the extent that plaintiff's testimony was consistent with the record as a whole, and with objective medical evidence, the ALJ adequately accounted for that testimony by including limitations in the RFC.

II. *Treatment of Medical Opinions*

Plaintiff challenges the ALJ's weighing of the opinions of Dr. Webb and Dr. Hofkamp. Specifically, plaintiff argues that the ALJ should have assigned full weight to the disabling

limitations in Dr. Webb's opinion and rejected Dr. Hofkamp's opinion that "working would actually likely be good for [plaintiff]." Tr. 671.

The ALJ must explicitly reject medical opinions, or set forth specific, legitimate reasons for crediting one medical opinion over another. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors,' are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "[T]he consistency of the medical opinion with the record as a whole" is a relevant consideration in weighing competing evidence. *Orn*, 495 F.3d at 631.

Plaintiff argues more weight should have been afforded to the physical health RFC questionnaire completed by sports medicine specialist, Dr. Webb. The ALJ assigned partial weight to this opinion because, while it has some support in the record, the disabling restrictions noted by Dr. Webb were not fully supported. Specifically, the ALJ noted that "only six months previously, the claimant's treating doctor stated her conditions were somatic." Tr. 37. The use

of "somatic" by the ALJ here is unclear, but the treatment notes to support this conclusion indicate that Dr. Hoftkamp told plaintiff that she "doubted she would qualify for disability/SSI," that "working would actually likely be good for her," and that there were "no abnormalities" in the lab reports or physical examination. Tr. 671. (Dr. Hoftkamp also noted that she was "suspicious for fibromyalgia" and discussed this with plaintiff, but this diagnosis was never made, or alleged by plaintiff in this proceeding.)

The ALJ reasoned that the limitations Dr. Webb indicated on the RFC checklist, along with the notation of "anxiety," were inconsistent with daily living activities that were also in the record, such as: swimming, international travel, walking, and shopping in stores. These inconsistencies are acceptable considerations for affording partial, rather than full, weight to Dr. Webb's assessment.

Dr. Webb's responses were also not persuasive to the ALJ because they indicated that while plaintiff has physical limitations, there was no substantiating detail on the medical findings to support those limitations. To support the findings, Dr. Webb merely wrote "[s]ee progress notes." Tr. 700. However, the progress notes as a whole indicate that plaintiff showed improvement over the course of treatment. For example, in May 2014, the last time Dr. Webb treated plaintiff, he noted she had a normal gait, a normal range of motion in her spine, and was "healthy, alert, and cooperative." Tr. 674. Additionally, the questionnaire asked: "[a]re your patient's impairments and illnesses consistent with causing the types of limitations she experiences?" Tr. 699. Dr. Webb declined to answer that question, and noted it should be directed to plaintiff's primary care physician. The ALJ reasonably found that Dr. Webb's non-responses to these questions undermined the persuasiveness of his opinion, warranting partial rather than full weight. I find no error there.

Plaintiff also contends that the ALJ should have discounted treating physician Dr. Hoftkamp's notation that working would benefit plaintiff. There is no legal error in the ALJ's partial weighting of Dr. Hoftkamp's treatment notes, most clearly because, as plaintiff's treating doctor, she has "an advantageous position from which to assess residual functional capacity." Tr. 36. The ALJ did not assign full weight because Hoftkamp's opinion did not contain specific functional restrictions that were indicated by other evidence in the record.

Thus, the ALJ provided specific, legitimate reasons to support her decisions to give partial weight to the opinions of both Dr. Webb and Dr. Hoftkamp. Accordingly, I will not disturb these findings.

III. *Lay Witness Statement*

Plaintiff argues the ALJ erred in partially weighting the statements of plaintiff's neighbor, Ms. Suad Elmi. In general, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." *Nguyen*, 100 F.3d at 1467 (emphasis omitted). This is because "[a]n eyewitness can often tell whether someone is suffering or merely malingering," particularly if the witness "view[s] the claimant on a daily basis[.]" *Dodrill*, 12 F.3d at 919. An ALJ may discount lay witness testimony only by providing reasons that are "germane" to each witness. *Id.*

Elmi provided a written statement that included her observations of plaintiff experiencing extreme pain when she performed household chores, such as laundry or washing dishes, and when she typed on the computer. The ALJ provided germane reasons to only partially weight this testimony, namely that the symptoms described (severe migraines, and dizzy spells when using arms) were not supported by the record as a whole. Specifically, the ALJ discussed evidence that, during the period of alleged disability, plaintiff was swimming daily, which would

Page 9 – OPINION AND ORDER

indicate that she used her arms, and commented: "It would be odd if the claimant swam daily when it caused migraines and dizziness." Tr. 38. Still, the ALJ used Elmi's statement to inform plaintiff's RFC finding that she had functional limitations and could only preform a less-than-a-full-range of sedentary work. Those limitations are adequately accounted for by the restrictions in the RFC. I find no legal error in the ALJ's approach here.

IV.  *Residual Functional Capacity Finding*

Plaintiff contends that the ALJ failed to incorporate medical findings into her RFC, causing legal error. A claimant does not establish error by simply restating her arguments that the ALJ improperly discounted certain evidence when the record instead demonstrates that the ALJ properly weighted the evidence. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). I have found no error in the ALJ's review of the record as a whole and the resulting partial weight given to medical opinions and lay witness testimony.

V.  *Duty to Develop the Record Regarding Plaintiff's Anxiety*

Finally, plaintiff argues that the ALJ erred when she neglected to develop the record further regarding plaintiff's alleged mental impairments – namely, anxiety. In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The ALJ's duty to develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir.2011). Plaintiff contends that the ALJ should have further developed the record, apparently to determine that plaintiff suffers from an anxiety disorder that contributes to her disability.

While anxiety is mentioned in several notations in the medical record, the plaintiff was not under the care of a treating psychiatrist, psychologist, counselor, or other mental health provider during the period of disability, nor were referrals for such treatment ever made by her medical physicians. The record also does not indicate that she sought such treatment. The record before the ALJ was neither inadequate or ambiguous. Ultimately, it was plaintiffs' duty to prove that she was disabled. *See* 42 U.S.C. § 423(d)(5) (Supp.2001); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). A few passing mentions of anxiety did not trigger a duty on the part of the ALJ to further develop the record where plaintiff did not allege anxiety as part of her disability, or previously seek treatment for an anxiety disorder. Accordingly, there is no error here.

## CONCLUSION

The Commissioner's decision is AFFIRMED. Accordingly, this case is DISMISSED.

IT IS SO ORDERED.

Dated this 10th day of October 2018.

_____
Ann Aiken
United States District Judge